IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

JONATHAN LOWE,              )
JENNIFER LOWE,              )
    Plaintiffs,             )
                           )
v.                          )
                           )    Civil Action No. 3:18cv00126 (REP)
WELLS FARGO BANK, N.A,      )
    Defendant.              )
                           )

### REPORT & RECOMMENDATION
**On Defendant's Motion to Dismiss the Amended Complaint**

Jonathan Lowe and Jennifer Lowe (collectively the "Lowes") bring this action against

Wells Fargo Bank, N.A. ("Wells Fargo") for: (1) breach of contract; (2) breach of the duty of

good faith and fair dealing; (3) violation of 12 U.S.C. §§ 2604(k)–(m) of the Real Estate

Settlement Procedures Act ("RESPA"); (4) common law conversion; and (5) fraudulent filing of

an information return. This matter comes before Court pursuant to 28 U.S.C. § 636(b)(1)(B) for

a Report and Recommendation on Wells Fargo's Motion to Dismiss the Amended Complaint

("Motion to Dismiss") (ECF No. 3) under Federal Rule of Civil Procedure 12(b)(6). Having

considered the Lowes' Amended Complaint and the parties' briefs, and for the reasons discussed

below, the Court RECOMMENDS that Wells Fargo's Motion to Dismiss be GRANTED IN

PART and DENIED IN PART.

## I.    BACKGROUND

As required by Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court accepts

as true the Lowes' well-pleaded allegations and draws all reasonable inferences in the light most

favorable to them. *See T.G. Slater & Son, Inc. v. Donald P. & Patricia A. Brennan, LLC*, 385

F.3d 836, 841 (4th Cir. 2004) (citing *Mylan Labs, Inc. v, Matkari*, 7 F.3d 1130, 1134 (4th Cir.

1

1993)).  The Court's analysis at this stage is typically informed and constrained by the four corners of the Amended Complaint.  *See CACI Int'l, Inc. v. St. Paul Fire and Marine Ins. Co.*, 566 F.3d 150, 154 (4th Cir. 2009).  However, the Court may take judicial notice of matters of public record.  *Hall v. Virginia*, 385 F.3d 421, 424 n.3 (4th Cir. 2004).  Applying these standards, the following facts are established for the purpose of the Motion to Dismiss.

### A.  Summary of Allegations in the Amended Complaint

The Lowes entered into three mortgage loans with Wachovia Bank on September 24, 2007 to finance two separate residences.  They took out a first mortgage on a residence at 8100 Fallbrooke Drive, Richmond, Virginia, as evidenced by a note and secured by a deed of trust (the "Fallbrooke Loan").  (Am. Compl. ¶ 6, Notice of Removal Attach. 1 at 27, ECF No. 1-2.)  The Lowes also took out a first and second mortgage (respectively, the "First Hadley Loan" and the "Second Hadley Loan") on a residence at 7506 Hadley Lane, Chesterfield, Virginia, also evidenced by notes and secured by deeds of trust.  (*Id.* ¶¶ 3, 54, 55.)  Wells Fargo subsequently merged with Wachovia Bank, assuming the rights, obligations, and liabilities of the three loans. (*Id.* ¶ 9).  The Amended Complaint alleges multiple counts clustered about separate nuclei of operative facts.

### 1.  Counts I, II: The Fallbrooke Loan

At some unspecified time, the Lowes fell into arrears on the note for the Fallbrooke Loan.  (*Id.* ¶ 11.)  Later, on July 15, 2011, the Lowes filed a Chapter 13 Voluntary Petition for Bankruptcy in the United States Bankruptcy Court for the Eastern District of Virginia ("the Bankruptcy Court").  (*Id.* ¶ 12.)  The Lowes proposed their initial Chapter 13 Plan on July 20, 2011.  (Chapter 13 Plan and Related Motions, *In re Lowe*, Case No. 11-34586-KRH, ECF No. 7.)  The Bankruptcy Court confirmed the Lowes' proposed initial Chapter 13 Plan on September

2

27, 2011. (Order Confirming Chapter 13 Plan, *In re Lowe*, Case No. 11-34586-KRH, ECF No. 16.)

On or about October 23, 2012, Wells Fargo sent the Lowes a letter offering a trial plan for modification (the "Modification Letter") of the Fallbrooke Loan. (*Id.* ¶ 13; Am. Compl., Ex. C.) The Modification Letter explicitly stated the following:

> To accept this offer, you must make your first monthly "trial period payment." To qualify for a permanent modification, you must make the following <u>trial period payments in a timely</u> manner:
>
> 1st payment: $816.65 by December 1, 2012
> 2nd payment: $816.65 by January 1, 2013
> 3rd payment: $816.65 by February 1, 2013
>
> . . .
>
> After all trial period payments are timely made and you have submitted all the required documents, your mortgage will be permanently modified. However, if you are active in a Chapter 13 Bankruptcy any conversion to a permanent modification is conditioned on obtaining the bankruptcy court's approval to modify the Mortgage and release of the Mortgage from the bankruptcy plan . . .

Wells Fargo included in the Modification Letter a Change of Terms Agreement ("the Change Agreement") that, *inter alia*, memorialized the terms of the Modification Letter. (*Id.* ¶ 14, Am. Compl., Ex. C.) The Lowes executed the Change Agreement on November 27, 2012 and submitted both the Modification Letter and Change Agreement to Wells Fargo four days later. (Am. Compl. ¶ 14.) On information and belief, the Lowes allege that Wells Fargo executed the Change Agreement in December 2012. (*Id.* ¶ 16.) The Lowes remitted the three trial payments to Wells Fargo pursuant to the terms of the Modification Letter and the Change Agreement. (*Id.* ¶¶ 15, 17.)

In a letter dated February 19, 2013, Wells Fargo sent the Lowes a permanent loan modification offer on the Fallbrooke Loan. (Am. Compl., Ex. D.) The offer emphasized that "[a]pproval of the loan modification is contingent on court consent or release of the case" and the

Lowes were obliged to file a petition with the Bankruptcy Court for that consent. (*Id.*) The permanent loan modification offer included the typed signature of Brice Smithfield ("Smithfield"), a Home Preservation Bankruptcy Specialist at Wells Fargo. (*Id.*)

The Lowes took multiple actions to meet the requirements of the permanent loan modification proposal. They called and notified a Wells Fargo representative of their acceptance of the loan modification offer. (Am. Compl. ¶ 22(a).) They also continued remitting payments to Wells Fargo in excess of the monthly payment amount required under the permanent modification offer. (*Id.* ¶ 22(b).)

The Lowes took steps to obtain consent from the Bankruptcy Court for the permanent loan modification as well. The Bankruptcy Court adopted Richmond General Order No. 12–1 (Amended Compl., Ex. E) as its approval process of loan modification agreements in Chapter 13 cases. (Am. Compl. ¶ 24.) Under General Order 12–1, the Bankruptcy Court requires a "signed or unsigned copy of the proposed loan modification." (*Id.* ¶ 26; Am. Compl. Ex. E.) The Lowes, through their former attorney, requested a fully endorsed copy of the proposed loan modification from Wells Fargo from March through June 2013. (Am. Compl. ¶¶ 28–30.) Wells Fargo did not provide the requested document. (*Id.*) On June 7, 2013, Wells Fargo sent a letter repudiating the permanent loan modification offer. (*Id.* ¶ 31; Am. Compl. Ex. F.)

The Lowes proposed multiple amended plans thereafter, and the Bankruptcy Court confirmed an amended plan on October 18, 2013. (*See In re Lowe*, Case No. 11-34586-KRH, ECF Nos. 45–48.) The Bankruptcy Court confirmed yet another amended plan – the Lowes' final and effective Chapter 13 Plan – on September 15, 2016. (Order Confirming Chapter 13 Plan, *In re Lowe*, Case No. 11-34586-KRH, ECF No. 68.) The Lowes completed this final

Chapter 13 Plan and were discharged by the Bankruptcy Court on November 21, 2016. (Am. Compl. ¶ 12.) The Bankruptcy Court closed the case on March 31, 2017. (Id.)

Afterward, Wells Fargo retained BWW Law Group, LLC ("BBW Law") to institute a foreclosure action on the Fallbrooke residence. (Id. ¶ 38.) Equity Trustees, LLC, a wholly-owned subsidiary of BWW Law, scheduled a foreclosure sale of the residence for January 8, 2018 at 1:00 P.M. (Id. ¶¶ 39, 41.)

### 2. Counts III, IV: The First Hadley Loan & Force-Placed Insurance

The Amended Complaint is sparse on details regarding the alleged RESPA violation and conversion claims. As best the Court may deduce, the First Hadley Loan obligated the Lowes to obtain force-placed insurance on the Hadley residence. (Am. Compl., Ex. B, ¶ 5.) The Lowes allege that, at some point, Wells Fargo obtained force-placed insurance in connection with the First Hadley Loan even though the Lowes properly maintained homeowners insurance on the Hadley property and Wells Fargo "had actual and sufficient notice" that the Lowes had homeowners insurance on the Hadley property sufficient to meet their obligations under the Hadley Loans. (Am. Compl. ¶ 58.) The Lowes allege that they routinely provided evidence of the homeowners insurance policy to Wells Fargo, but that Wells Fargo nonetheless charged them for force-placed insurance on the First Hadley Loan on at least three separate occasions. (Id. ¶¶ 59, 61.) Wells Fargo's charges for these force-placed insurance premiums form the basis of one of the Lowes' conversion claims. (Id. ¶ 66.)

The Amended Complaint alleges another ground for conversion under Count IV. On or about December 22, 2016, Wells Fargo reallocated $661.14 in payments made by the Lowes on the Second Hadley Loan from principal reduction to "phantom interest charges." (Am. Compl. ¶ 67, Ex. G.) The $661.14 payment was attributed to "pre-filing arrearages" on the Second Hadley

5

Loan when Wells Fargo previously agreed to modify the loan and waive unpaid interest accrued on the loan through October 28, 2013.  (Am. Compl. ¶ 67, Ex. H.).

### 3.  Count V: The *Green* Credit

In November 2015, the United States Bankruptcy Court for the District of Maryland, Greenbelt Division published a public settlement document in the case *In Re Green*, No. 11-33377-TJC (Bankr. D. Md. November 19, 2015).  As a result of the *Green* case, Wells Fargo entered into a national settlement agreement with the Department of Justice's U.S. Trustee Program to pay $81.6 million in remediation for failing to provide legally required notices to homeowners regarding increases in their mortgage payment.  (*Id.* ¶ 77.)  The Lowes were among the homeowners owed a credit as a result of that settlement ("the *Green* credit").  (*Id.* at ¶ 79.)  On or about September 2, 2016, Wells Fargo applied the *Green* credit, in the amount of $1,313.00, to the Lowes' account on the Second Hadley Loan.   (*Id.* at ¶¶ 76–79, Ex. I.)  In January 2017, Wells Fargo filed a 1099-MISC with the Internal Revenue Service ("IRS") categorizing the *Green* credit as "miscellaneous income" attributed to the Lowes.  (*See id.* at ¶ 82.)  The Lowes received a copy of the 1099-MISC in February 2017, and Jonathan Lowe sent Wells Fargo a letter in March 2017 disputing the issuance of the 1099-MISC.  (*Id.* ¶¶ 82, 90.)  Wells Fargo did not respond to the dispute letter or take further action on the 1099-MISC with the IRS.  (*Id.* ¶ 90.)

### B.  Procedural History

The Lowes initiated this action against Wells Fargo by filing a Complaint in Chesterfield County Circuit Court on July 7, 2017.  Wells Fargo removed the action to this Court on August 10, 2017.  On August 16, 2017, Wells Fargo filed a Motion to Dismiss the Complaint.  On September 21, 2017, the Lowes filed a Motion to Remand.  By an Order dated October 18, 2017,

the Court ruled on both motions, dismissed the federal claim in the Complaint, and remanded the action to state court. *Lowe, et al. v. Wells Fargo Bank, N.A.*, Civ. No. 3:17cv564 (E.D. Va. Oct. 18, 2017).

The Lowes then filed an Amended Complaint in Chesterfield County Circuit Court, adding a plethora of new claims, that was entered by court order. On February 23, 2018, Wells Fargo removed the case to this Court under 28 U.S.C. §§ 1331, 1332. Wells Fargo then filed a Motion to Dismiss the Amended Complaint on March 2, 2018. Senior United States District Judge Payne issued an Order on March 16, 2018 referring the Motion to Dismiss to the undersigned for Report and Recommendation. (ECF No. 7.) The Court dispenses with oral argument because the facts and legal contentions are adequately presented in the materials before the Court, and oral argument would not aid in the decisional process. E.D. Va. Loc. Civ. R. 7(J). The Motion to Dismiss has been fully briefed and is ripe for review.

## II. STANDARD OF REVIEW

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of NC. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). Dismissals under Rule 12(b)(6) are generally disfavored by the courts because of their *res judicata* effect. *Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1471 (4th Cir. 1991). The Federal Rules of Civil Procedure only require that a complaint set forth "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (omission in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While the complaint's "[f]actual allegations must be

enough to raise a right to relief above the speculative level," "*detailed* factual allegations" are not required in order to satisfy the pleading requirement of Rule 8(a)(2). *Id.* (emphasis added). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are assumed to be true, and the complaint is viewed in the light most favorable to the plaintiff. *Mylan Labs*, 7 F.3d 1130 at 1134; *see also Martin*, 980 F.2d at 952. Legal conclusions enjoy no such deference. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## III. DISCUSSION

Wells Fargo argues in the Motion to Dismiss that the Lowes (1) are judicially estopped from bringing Counts I, II, and III and (2) fail to state a claim as to all counts in the Amended Complaint. The Court first addresses Wells Fargo's judicial estoppel argument before turning to the sufficiency of each of the Lowes' claims under the plausibility standard set forth in *Twombly*.

### A. Judicial Estoppel – Counts I, II, and III

Wells Fargo argues that the Lowes are judicially estopped from bringing Counts I, II, and III because these claims accrued prior to the termination of the Lowes' Chapter 13 bankruptcy proceeding. (Def.'s Mem. Sup. Mot. Dismiss at 8, ECF No. 4.) "Judicial estoppel precludes a party from adopting a position that is inconsistent with a stance taken in prior litigation." *Minnieland Private Day Sch., Inc. v. Applied Underwriters Captive Risk Assurance Co., Inc.*, 867 F.3d 449, 457 (4th Cir. 2017) (quoting *John S. Clark Co. v. Faggert & Frieden, P.C.*, 65 F.3d 26, 28 (4th Cir. 1995)). The doctrine "exists to prevent litigants from playing 'fast and loose' with the courts – to deter improper manipulation of the judiciary," *Folio v. City of Clarksburg*, 134 F.3d 1211, 1217 (4th Cir. 1998), and "to protect the integrity of the judicial system." *King v. Herbert J. Thomas Mem'l Hosp.*, 159 F.3d 192, 196 (4th Cir. 1998). As an equitable doctrine, judicial estoppel is applied at the Court's discretion, *id.*, but "courts must

8

apply the doctrine with caution." *Faggert & Frieden*, 65 F.3d at 29. Indeed, this Court recently reiterated:

> Judicial estoppel is an "extraordinary remed[y] to be invoked when a party's inconsistent behavior will otherwise result in a miscarriage of justice." . . . It is not meant to be a technical defense for litigants seeking to derail potentially meritorious claims, especially when the alleged inconsistency is insignificant at best and there is no evidence of intent to manipulate or mislead the courts. Judicial estoppel is not a sword to be wielded by adversaries unless such tactics are necessary to "secure substantial equity."

*Thomas v. FTS USA, LLC*, 193 F. Supp. 3d 623, 639 (E.D. Va. 2016) (J. Payne) (quoting *Ryan Ops. G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 365 (3d Cir. 1996)).

While the "circumstances under which judicial estoppel may be appropriately invoked are probably not reducible to any general formulation of principle," *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001), the Fourth Circuit instructs that the following four elements must be met before a district court may apply the doctrine: (1) "the party sought to be estopped must be seeking to adopt a position that is inconsistent with a stance taken in prior litigation;" (2) "the position sought to be estopped must be one of fact rather than law or legal theory;" (3) "the prior inconsistent position must have been accepted by the court;" and (4) "the party sought to be estopped must have intentionally misled the court to gain unfair advantage." *Minnieland*, 867 F.3d at 458 (quoting *Lowery v. Stovall*, 92 F.3d 219, 223–24 (4th Cir. 1996)). The final element is determinative. *Lowery*, 92 F.3d at 224. "[C]ourts will not apply judicial estoppel when a party's prior position was based on inadvertence or mistake." *Id.* (quoting *Faggert & Frieden*, 65 F.3d at 29) (internal quotations omitted).

Wells Fargo contends that judicial estoppel bars Count I, II, and III of the Amended Complaint. As an initial matter, the Court is unable to evaluate the applicability of the doctrine to the Lowes' RESPA claim because the Lowes have not plead the date of occurrence for the

alleged violation.[1]  Counts I and II are tied specifically to Wells Fargo's alleged repudiation of the modified loan agreement, occurring by letter on June 7, 2013; the cause of action for these claims accrued on that date.[2]

The primary thrust of the Lowes' arguments against application of judicial estoppel is twofold.  First, the Lowes argue that they had no duty to disclose the legal claims enshrined in Counts I and II because they accrued after confirmation of their Chapter 13 Plan and were unnecessary to complete the Plan.  Second, the Lowes argue that their nondisclosure of the claims underlying Counts I and II lacked the requisite intent to mislead the courts such that they ought to be judicially estopped.  The Court analyzes these two issues – the duty to disclose and intent to mislead – on an individual basis.

### 1.    The Debtor's Duty to Disclose in a Chapter 13 Bankruptcy

In reply to the Motion to Dismiss, the Lowes argue that post-confirmation assets are not the property of the bankruptcy estate.  Accordingly, they had no statutory duty to disclose the claims underlying Counts I and II of the Amended Complaint because the causes of action arose after confirmation of their Chapter 13 Plan.  The Lowes' position is adverse to the prevailing view regarding the debtor's duty to disclose within the Fourth Circuit.

The bankruptcy estate under federal bankruptcy law comprises, with some exceptions not applicable here, "all legal or equitable interests of the debtor in property as of the commencement of the case."  11 U.S.C. § 541(a)(1).  The Fourth Circuit construes this definition

---

[1] RESPA claims accrue "from the date of the occurrence of the violation." 12 U.S.C. § 2614.

[2] The Lowes contend that the breach of contract, and the breach of the implied covenant of good faith and fair dealing, accrued after confirmation of their Chapter 13 Plan because "Wells Fargo had foreclosed on the residence, resulting in accrual of additional damages arising from its breach of contract and the implied covenant of good faith and fair dealing." (Pl. Mem. in Opp'n Mot. Dismiss at 15, ECF No. 8.)  Virginia law does not recognize a cause of action for "wrongful foreclosure." *Yerion v. Branch Banking & Tr. Co.*, 27 F. Supp. 3d 677, 682-83 (E.D. Va. 2014).  Moreover, the Virginia Code is clear that a breach of contract action accrues at the time of the breach, "not when the resulting damage is discovered." Va. Code Ann. § 8.01-230.  The Lowes' post-confirmation accrual theory is without foundation in Virginia law.

broadly to "encompass all kinds of property, including intangibles." *Logan v. JKV Real Estate Servs. (In re Bogdan)*, 414 F.3d 507, 512 (4th Cir. 2005) (quoting *Integrated Solutions, Inc. v. Serv. Support Specialties, Inc.*, 124 F.3d 487, 490 (3d Cir. 1997)). The "property of the estate" under section 541(a) has "uniformly been interpreted to include causes of action." *Id.* (quoting *Polis v. Getaways, Inc.*, 217 F.3d 899, 901 (7th Cir. 2000)).

Federal bankruptcy law requires that debtors disclose the property of the estate by filing a "schedule of assets and liabilities" with their accompanying bankruptcy petition that discloses, *inter alia*, all actual or potential legal claims, along with the estimated value of those claims, as of the commencement of the case. *Robertson v. Flowers Baking Co. of Lynchburg, LLC*, 2012 WL 830097, at *5 (W.D. Va. Mar. 6, 2012) (citing 11 U.S.C. § 541(a)(1)); *see also Thomas*, 193 F. Supp. 3d at 639; 11 U.S.C. § 521. The "duty of disclosure in a bankruptcy proceeding is a continuing one, and a debtor is required to disclose all potential causes of action." *Thomas*, 193 F. Supp. 3d at 639 (quoting *In re USinternetworking, Inc.*, 310 B.R. 274, 282 (Bankr. D. Md. 2004). For Chapter 13 purposes, the property of the bankruptcy estate includes both the property disclosed at the commencement of the case and "all property of the kind specified in [section 541] that the debtor acquires after the commencement of the case *but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or 12 of this title, whichever occurs first*." 11 U.S.C. § 1306(a)(1) (emphasis added); *see also Carroll v. Logan*, 735 F.3d 147, 151–52 (4th Cir. 2013) (affirming this formulation of the property in a Chapter 13 bankruptcy estate). The Fourth Circuit has interpreted section 1306(a) to "provide[] for the continued existence of the bankruptcy estate until the earliest of any of the above-mentioned events occur." *In re Murphy*, 474 F.3d 143, 153 (4th Cir. 2007). Thus, a cause of action that accrues post-confirmation but prior to the closure, dismissal, or conversion of a Chapter 13 case is property of the bankruptcy

11

estate. *See In re Leavell*, 190 B.R. 536, 540 (Bankr. E.D. Va. 1995) ("[T]he clear language of §1306 demonstrates that confirmation of the plan is not relevant to determining whether property is or is not property of the state. The relevant events in this determination are commencement of the case and either dismissal, closing, or conversion of the case." (internal citations omitted)). The debtor is statutorily obligated to disclose such "legal and equitable interests" to the bankruptcy court under federal bankruptcy law. *Id.*; *Thomas*, 193 F. Supp. 3d at 639.

The timeline illustrates that the Lowes did not satisfactorily meet their continuing obligation to disclose. The Lowes filed for bankruptcy on July 15, 2011 and the Bankruptcy Court confirmed their proposed initial Chapter 13 Plan on September 27, 2011. The causes of action underlying Counts I and II of the Amended Complaint accrued on June 7, 2013. The Lowes proposed multiple amended plans in the ensuing years and the Bankruptcy Court confirmed an amended plan on October 18, 2013. The Bankruptcy Court confirmed yet another amended plan – the Lowes' final and effective Chapter 13 Plan – on September 15, 2016. The Lowes completed this final Chapter 13 Plan and were discharged by the Bankruptcy Court on November 21, 2016. The Bankruptcy Court closed the case on March 31, 2017. Thus, the causes of action underlying Counts I and II of the Amended Complaint accrued and were the property of the bankruptcy estate over three years before confirmation of the Lowes' effective Chapter 13 Plan or the close of the bankruptcy case. Nonetheless, the Lowes failed to amend their financial statements to disclose these potential causes of action.

The Lowes' failure to disclose meets the first three elements for application of judicial estoppel. *See Payne v. Wyeth Pharmaceuticals, Inc.*, 606 F. Supp. 2d 613, 615–16 (E.D. Va. 2008) ("[W]here a debtor fails to list a potential claim on the debtor's bankruptcy petition, and fails to amend the petition when the claim becomes known, the first three [*Minnieland*] elements

are generally met.")  The Lowes assert in this Court that they have a valid causes of action against Wells Fargo under Count I and Count II.  The Lowes never listed such claims or potential claims against Wells Fargo on their bankruptcy schedules during the pendency of their Chapter 13 bankruptcy.  *See Stallings v. Hussman Corp.*, 447 F.3d 1041, 1047 (8th Cir. 2006) ("A debtor's failure to list a claim in the mandatory bankruptcy filings is tantamount to a representation that no such claim existed."); *Bland v. Doubletree Hotel Downtown*, Civ. No. 3:09CV272, 2010 WL 723805, at *3 (E.D. Va. Mar. 2, 2010).  "This inconsistent position – the existence versus the non-existence of a cause of action – is one of fact instead of law." *Sibert v. Wells Fargo Bank, N.A.*, 3:14CV737-HEH, 2015 WL 3946698, at *1 (E.D. Va. June 26, 2015). The bankruptcy judge accepted, and relied upon, the Lowes' position that they had no pending or potential legal causes of action against their creditors, including Wells Fargo, when granting them a discharge and closing the case.  *See id.*  Accordingly, the Lowes' failure to disclose the potential causes of action underlying Counts I and II meets the first three requirements for application of judicial estoppel.

### 2.    Intent to Manipulate or Mislead the Court

The Lowes next argue that they lacked the requisite intent to manipulate or mislead the Bankruptcy Court. In bankruptcy cases, a "debtor's failure to satisfy its statutory disclosure duty is inadvertent 'only when, in general, the debtor either lacks knowledge of the undisclosed claims or has no motive for their concealment." *Robertson*, 2012 WL 830097, at *6 (quoting *Thomas v. Palmetto Mgmt. Servs.*, Civil Action No. 3:05-cv-17, 2006 WL 2623917, at *3 (D.S.C. Sept. 11, 2006), *aff'd*, 234 F. App'x 166 (4th Cir. 2007)).  The Lowes knew about the undisclosed claims based on their July 17, 2013 submission of a Response to Notice of Objection to Confirmation of the Amended Chapter 13 Plan. (*In re Lowe*, Case No. 11-34586-KRH, ECF

13

No. 41.)  In the Response, the Lowes discuss the factual allegations regarding the trial loan modification offer in detail substantially similar to the Amended Complaint. (*Id.*)  Moreover, the Lowes specifically requested that the Bankruptcy Court deny the attorneys' fees for Wells Fargo because "[t]he debtors should not be legally responsible for the errors and omissions of [Wells Fargo]" and "Wells Fargo Bank N.A., has provided documents, dated June 7, 2013, which claim the United States Bankruptcy Court has already denied the Modification/Amended Chapter 13 Plan, *which could be interpreted as a false claim*." (*Id.* at 4 (emphasis added).)  These statements are adequate indicia that the Lowes knew of the undisclosed claims at the time they filed the Response with the Bankruptcy Court.

The Lowes' failure to disclose the claims is not a mistake either. The Lowes knew about their duty to disclose potential claims against their creditors.  Indeed, in their original Schedules to the Chapter 13 Petition, the Lowes claimed that they possessed a single legal claim for "past due rent."  (Summary of Schedules at 5, *In re Lowe*, Case No. 11-34586-KRH, ECF No. 6.) After receiving Wells Fargo's notice of the modification denial, however, the Lowes – represented by counsel – filed Amended Schedules that did not incorporate the new claims.  In sum, the Lowes disclosed a civil claim in the past, did not do so for the claims serving as the basis for Counts I and II of the Amended Complaint, and asserted statements to the Bankruptcy Court in their Response demonstrating their knowledge of the undisclosed claims.  The Lowes' nondisclosure was neither inadvertent nor by mistake.  All four requirements for the application of judicial estoppel to Counts I and II have been met.

The Lowes implore the Court to stay application of judicial estoppel in the interest of equity and justice.  They claim that Wells Fargo will receive a windfall otherwise because the Fallbrooke Loan was not discharged in bankruptcy and there is now a deficiency balance owed

14

to the loan as a result of foreclosure on the Fallbrooke property. The Court is not persuaded. The Lowes seek over $800,000 in damages from their lender, on a loan having an original principal amount of $123,816. Application of judicial estoppel in this instance is not merely technical. The Lowes would be permitted to recover a windfall gain – a clear motive to conceal the claims undergirding Count I and II in the first right – if the Court permitted them to pursue these undisclosed claims in this post-bankruptcy suit, "the right to which should have been equitably distributed among the former creditors." *Casto, et al. v. Am. Union Boiler Co. of W. Virginia*, No. Civ. A. 2:05-cv-757, 2006 WL 660458, at *2 (S.D.W.V. Mar. 14, 2006). The interests of equity and justice militate toward application of judicial estoppel.

Accordingly, the Court RECOMMENDS that Counts I and II be DISMISSED WITH PREJUDICE.

## B.    Failure to State a Claim

### 1.    Counts I & II: Breach of Contract, Duty of Good Faith & Fair Dealing

While the Lowes are judicially estopped from bringing Counts I and II of the Amended Complaint, in the interests of judicial efficiency, the Court shall also address the sufficiency of the pleadings on these counts.

The Amended Complaint fails to sufficiently state a claim for breach of contract or breach of the implied covenant of good faith and fair dealing. The Lowes allege that a contract for a permanent loan modification was formed when, in response to Wells Fargo's permanent loan modification letter, they accepted the offer by: (1) calling Wells Fargo to communicate acceptance; (2) making continued payments in the amount stipulated in the trial plan; (3) instructing their attorney to obtain bankruptcy court approval of the loan modification offer; (4) requesting paperwork finalizing the modification from Wells Fargo; and (5) through their

15

attorney, contacting Wells Fargo to communicate acceptance and to seek bankruptcy court approval of the loan modification offer. (Am. Compl. ¶¶ 22–23, Ex. D.) The Lowes further argue that Wells Fargo breached the alleged contract by sending a letter repudiating the permanent modification offer after the company failed to provide a "signed or unsigned copy of the proposed loan modification" to the Lowes, therein preventing the Lowes from submitting said modification to the Bankruptcy Court for approval and fulfilling a condition precedent to the contract. (*Id.* ¶¶ 27–31, 37, Ex. F.) The Lowes also claim that Wells Fargo breached the implied covenant of good faith and fair dealing in both the original loan documents and the alleged modification contract by failing to cooperate in obtaining bankruptcy court approval of the modification and rescinding the offer. (*Id.* ¶¶ 50–51.) In response, Wells Fargo argues that a contract for a permanent loan modification never formed because the offer letter was properly rescinded before the Lowes fulfilled the terms of acceptance, and Wells Fargo did not owe the Lowes a duty to modify their original loan. (Def.'s Mem. Supp. Mot. Dismiss at 4–5.)

To establish breach of contract under Virginia common law,[3] a plaintiff must demonstrate "(1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation." *Filak v. George,* 594 S.E.2d 610, 614 (Va. 2004) (citations omitted). A legally enforceable obligation – a contract – requires the parties to mutual assent to the terms proposed. *Valjar, Inc. v. Mar. Terminals, Inc.*, 265 S.E.2d 734, 737 (Va. 1980) (citing *Progressive Constr. v. Thumm*, 161 S.E.2d 687, 691 (Va. 1968)). The essential elements of the contract are offer,

---

[3] The choice of law provisions in both the Fallbrooke note and the deed of trust stipulate that the contract is governed by federal law and the laws of the jurisdiction in which the property is located—Virginia. (Am. Compl. Ex. A ¶ 14, Ex. B ¶ 15.) Virginia choice of law rules state that contracts are "governed by the law of the place of the transaction or the place where the right is acquired." *Frye v. Commonwealth*, 345 S.E.2d 267, 272 (Va. 1986) (citations omitted). Accordingly, Virginia contract law applies to both the original loan contract and the purported modification contract.

acceptance, and consideration. *Snyder-Falkinham v. Stockburger,* 457 S.E.2d 36, 39 (Va. 1995) (citing *Montagna v. Holiday Inns, Inc.*, 269 S.E.2d 838, 844 (Va. 1980)). The party making the offer may prescribe the terms of acceptance, and the accepting party "must in every respect meet and correspond with the offer . . ." to form the contract. *Gibney & Co. v. Arlington Brewery Co.*, 70 S.E. 485, 487 (Va. 1911). Where a plaintiff does not sufficiently plead mutual assent to the terms of a contract, a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is proper. *See, e.g., Audio Visual Assocs. v. Sharp Elecs. Corp.*, 210 F.3d 254, 259–61 (4th Cir. 2000) (affirming dismissal of breach of contract claim where price quote "offer" was conditioned on authorization by offeror and authorization was not plead); *McInnis v. BAC Home Loan Servicing, LP*, No. 2:11-CV-468, 2012 WL 383590, at *6–8 (E.D. Va. Jan. 13, 2012) (granting motion to dismiss breach of contract claim regarding loan modification where trial period terms included conditions for modification that were not alleged to be satisfied).

The Lowes fail to sufficiently plead mutual assent to the terms of the permanent modification letter and, thus, fail to state a claim for breach of contract. It is unclear that the permanent loan modification letter, which requires "next steps" by the Lowes before completing the prerequisites of a modification, is an offer rather than a preliminary negotiation. (Am. Compl. Ex. D); *see* Restatement (Second) of Contracts § 26 (Am. Law Inst. 1981). For the purposes of the Motion to Dismiss, the Court construes the letter, in the Lowes' favor, as an offer. Consideration appears plausibly plead, as the permanent modification proposal involves an increase in the unpaid principal balance in exchange for more favorable repayment terms. (Am. Compl. Ex. D); *see, e.g., Neil v. Wells Fargo Bank, N.A.*, 596 Fed. App'x 194, 197 (4th Cir. 2014) (per curiam). However, none of the Lowes' various attempts to establish acceptance of the terms of the permanent loan modification letter are sufficient, because the letter, attached

17

to the Amended Complaint, expressly states that, "[a]pproval of the loan modification is contingent on court consent or release of the case." (Am. Compl., Ex. D.) Where, as here, the plaintiff has provided the full text of a contract offer, the Court may assess whether the plaintiff's alleged acceptance complied with the offer terms for purposes of a motion to dismiss. *See Audio Visual Assocs.*, 210 F.3d at 259–60; *McInnis*, 2012 WL 383590, at *7–8. The Amended Complaint indicates that Bankruptcy Court approval of the proposed modification was not secured during the more than three-month period between receipt of the offer and its revocation. (Am. Compl. ¶¶ 29, 31.) Therefore, the Lowes failed to satisfy a condition of acceptance, and a contract for permanent loan modification was never formed.

The Lowes invoke the prevention doctrine to argue that Wells Fargo is liable for breach of contract for failing to provide "a signed or unsigned copy of the proposed loan modification" as required by the Bankruptcy Court. (*Id.* ¶ 29.) The prevention doctrine, used offensively in a breach of contract action, instructs that "'[w]hen a promisor prevents, hinders, or renders impossible the occurrence of a condition precedent to its promise to perform . . . the promisor is not relieved of the obligation to perform and may not legally terminate the contract for non-performance.'" *Rastek Constr. & Dev. Corp. v. Gen. Land Com. Real Est. Co., LLC*, 806 S.E.2d 740, 746 (Va. 2017) (quoting 13 Samuel Williston & Richard A. Lord, A Treatise on the Law of Contracts § 39:3, at 571–73 (4th ed. 2013)). However, "[t]he prevention doctrine applies to a condition precedent to performance under a binding existing contract and not to a condition precedent to formation of a contract." *Saza, Inc. v. Zota*, No. 3:11-CV-363, 2012 WL 527370, at *6 (E.D. Va. Feb. 16, 2012) (citing *Moore Bros. Co. v. Brown & Root, Inc.*, 207 F.3d 717, 725 (4th Cir. 2000)). The prevention doctrine includes a number of requirements, including that the prevention be "active, wrongful," and "'in excess of [the promisor's] legal rights.'" *Rastek*, 806

S.E.2d at 746 (quoting *Whitt v. Godwin*, 139 S.E.2d 841, 844 (Va. 1965)). The prevention doctrine cannot be used, "'to compel positive action by the promisor to bring about the performance of the condition.'" *Id.* at 747 (quoting *Amies v. Wesnofske*, 174 N.E. 436, 438 (N.Y. 1931)). Finally, the prevention must be the "but-for" cause of the party's failure to satisfy the condition. *Id.* (citations omitted).

Because the requirement to obtain Bankruptcy Court approval of the permanent loan modification was a condition of acceptance rather than a condition precedent to performance of a binding contract, the prevention doctrine does not apply. *See Saza,* 2012 WL 527370, at *6. Moreover, even if the prevention doctrine were to apply, the "permanent loan modification offer" sent by Wells Fargo and submitted by the Lowes as Exhibit D appears on its face to comply with the Bankruptcy Court's requirement of a submission of a "signed or unsigned copy of the proposed loan modification."[4] Any distinction between a "permanent loan modification offer" and a "proposed loan modification" is elusive, and the Court is not bound to the Lowes' factual allegations which are "contradicted by the plain language of underlying documents upon which the complaint relies." *See Sherman v. Litton Loan Servicing, L.P.*, 796 F. Supp. 2d 753, 763 (E.D. Va. 2011) (citing *Trigon Ins. Co. v. Columbia Naples Cap. LLC*, 235 F. Supp. 2d 495, 499 n.2 (E.D. Va. 2002)). The Lowes have not sufficiently plead prevention by Wells Fargo.

The Lowes' prevention argument fails for additional reasons. First, the Lowes' request appears to compel positive action by Wells Fargo, a request beyond the scope of the doctrine. *See Rastek*, 806 S.E.2d at 747. Second, because satisfaction of the condition was contingent on Bankruptcy Court approval rather than mere transfer of the requested documents, it is doubtful Wells Fargo's refusal to comply could be a "but-for" cause of the condition's failure. *See id.* at

---

[4] Indeed, elsewhere in the Amended Complaint, the Lowes assert that the signature on the modification proposal constituted a signature by Wells Fargo sufficient to bind it to a permanent loan modification. (Am. Compl. ¶¶ 20-23.)

747–48.  Thus, the Lowes cannot sufficiently state a claim for breach of contract using the prevention doctrine.

Next, in Count II, the Lowes argue that Wells Fargo's actions breached the implied covenant of good faith and fair dealing incorporated into both the original loan documents and the alleged modification contract.  A claim for breach of the implied covenant of good faith and fair dealing under Virginia law requires "(1) a contractual relationship between the parties, and (2) a breach of the implied covenant." *Enomoto v. Space Adventures, Ltd.*, 624 F. Supp. 2d 443, 450 (E.D. Va. 2009) (citing *Charles E. Brauer Co. v. NationsBank of Virginia, N.A.*, 466 S.E.2d 382, 386 (Va. 1996)).  The implied covenant does not apply "when parties to a contract create valid and binding rights . . . ," *Ward's Equip., Inc. v. New Holland N. Am.*, 493 S.E.2d 516, 520 (Va. 1997), though contractual discretion may not be exercised in bad faith.  *Va. Vermiculite, Ltd. v. W.R. Grace & Co.*, 156 F.3d 535, 542 (4th Cir. 1997).  Additionally, "a covenant cannot be the vehicle for rewriting an unambiguous contract in order to create duties that do not otherwise exist." *Ward's Equip.*, 493 S.E.2d at 520 (citations omitted).  The implied covenant cannot be invoked "to create obligations with respect to loan modification that were not present in the underlying contracts." *McInnis*, 2012 WL 383590, at *8.

First, the claim for a breach of the implied covenant through the loan modification proposal letter fails with the determination that no contract to modify was formed.  *See* Restatement (Second) of Contracts § 205 cmt. c (Am. Law Inst. 1981) (contractual duty of good faith "does not deal with good faith in the formation of a contract.").  Second, the terms of the original Fallbrooke note and deed of trust establish explicit contractual rights regarding default and modification.  (Am. Compl. Ex. A ¶¶ 5, 11, 15, Ex. B. ¶ 11.)  Nowhere in these contracts is there a right of the Lowes to a loan modification or assistance in complying with the

preconditions thereof. (*See* Am. Compl. Ex. A, Ex. B.) Because the implied covenant of good faith and fair dealing cannot be used to create new duties, particularly with respect to loan modifications, it is not applicable to the contracts at issue. *See McInnis*, 2012 WL 383590, at *8; *Ward's Equip.*, 493 S.E.2d at 520. Finally, though the Amended Complaint avers in conclusory terms that the implied covenant was breached, the Amended Complaint does not specifically allege bad faith by Wells Fargo. As discussed above, a plain reading of the Amended Complaint indicates that a sufficient document was provided by Wells Fargo to acquire Bankruptcy Court approval. (Am. Compl. ⁋ 50, Ex. D, Ex. E.)

Accordingly, the Court also finds that Counts I and II fail to state a claim upon which relief may be granted.

### 2.    Count III: RESPA Violation, 12 U.S.C. §§ 2605(k)–(m)

In Count III, the Lowes aver in the Amended Complaint that Wells Fargo violated 12 U.S.C. §§ 2605(k)-(m) by obtaining force-placed hazard insurance, in connection with the First Hadley Loan[5], after the Lowes had already purchased and maintained homeowners insurance on the property. (Am. Compl. ¶¶ 58–61.) The Lowes allege that Wells Fargo charged insurance premiums and interest to their account even after they showed the company proof that they obtained homeowners insurance on the property. (*Id.* at ¶¶ 58, 59, 62). Wells Fargo contends that the Amended Complaint fails to allege the timeframe within which the company obtained force-placed hazard insurance, a necessary fact to state the Lowes' RESPA claim. (Def. Mem. Supp. Mot. Dismiss at 21.)

Section 2605(k)(1)(A) prohibits a loan servicer of a federally related mortgage from obtaining forced-placed insurance unless a reasonable basis exists to believe that the borrower

---

[5] The Lowes allege that the First and Second Hadley Loans are each a "federally related mortgage" as defined by 12 U.S.C. § 2602(1). The Court takes this allegation as true at the motion to dismiss stage, and accordingly, 12 U.S.C. §§ 2605(k)–(m) apply to the parties' mortgagee-mortgagor relationship.

failed to comply with the loan requirements to maintain homeowners insurance. The statute is clear on the proper procedure for a loan servicer to establish a "reasonable basis." The loan servicer must first send a written notice to the borrower that includes the following: a reminder to the borrower of his or her obligation to maintain hazard insurance on the property, a statement that the servicer lacks evidence of insurance coverage on the property, a "clear and conspicuous statement of the procedures" that the borrower may use to show he or she already has insurance coverage, and a statement that the servicer may obtain such coverage at the borrower's expense if the borrower does not show proof of coverage in a timely manner. *Id.* § 2605(l)(1)(A). The loan servicer must then send a second notice, at least thirty (30) days after the first notice, containing the same substantive requirements as the first notice. *Id.* § 2605(l)(1)(B). A reasonable basis is established if the servicer does not receive the borrower's proof of coverage at least fifteen (15) days after the servicer sends the second notice. *Id.* § 2605(l)(1)(C).

After meeting the above requirements, the servicer may obtain force-placed hazard insurance on the secured property at the borrower's expense. However, if the borrower subsequently shows proof of homeowners insurance, the servicer shall, within fifteen (15) days of receipt of proof, terminate the force-placed insurance and refund the borrower for any premiums he or she paid during any overlap time period between the two policies. *Id.* § 2605(l)(3).

The Amended Complaint pleads sufficient facts to make out a § 2605 RESPA claim. Indeed, the Lowes allege that, after receiving notice of the Lowes' homeowners insurance on the Hadley residence, Wells Fargo failed to comply with § 2605(l)(3) when it assessed charges against the First Hadley Loan for force-placed insurance on at least three separate occasions. (Am. Compl. ¶¶ 58, 59, 61.) The Amended Complaint fails to specify the time the alleged

RESPA violations occurred but this lack of detail is immaterial at the motion to dismiss stage.[6] Federal Rule of Civil Procedure 8(a) merely requires that a claim contain a "short and plain statement." Count III sufficiently meets this requirement[7], and the parties may more fully explore the timing of the RESPA violations in discovery. For these reasons, the Court RECOMMENDS that the Motion to Dismiss be DENIED as to Count III of the Amended Complaint.

### 3.     Count IV: Common Law Conversion

In Count IV of the Amended Complaint, the Lowes raise two separate conversion claims. First, the Lowes claim that Wells Fargo wrongfully converted $661.14 in payments under the Second Hadley Loan to pay arrears the Lowes accrued in unpaid interest prior to their bankruptcy filing even though Wells Fargo "agreed to modify that loan and waive unpaid interest accrued on the loan through October 28, 2013, if not later." (Am. Compl. ¶¶ 66, 67.) The Lowes allege that "Wells Fargo wrongfully increased payments on the second Hadley loan during the pendency of the bankruptcy case, and accepted increased payments from the Lowes without (a) applying the excess funds to the principal balance of the loan or (b) promptly refunding the excess funds to the Lowes." (*Id.* ¶ 68.) Second, the Lowes claim that Wells Fargo wrongfully assessed charges on the First Hadley Loan for force-placed insurance. (Am. Compl. ¶ 65.)

---

[6] In its brief in support of the Motion to Dismiss, Wells Fargo moves under Fed. R. Civ. P. 12(e) for the Court to order Lowes to provide a more definite statement regarding the timeline of the alleged RESPA violation. Wells Fargo uses an improper procedural vehicle by couching a Rule 12(e) Motion for a More Definite Statement within its brief in support of the Motion to Dismiss. Rule 12(e) requires filing a motion with the Court, not embedding the request within a brief supporting a separate motion.

[7] To the extent that Wells Fargo argues that the Lowes must plead the timing of the RESPA violations under Fed. R. Civ. P. 9(f), such arguments are unavailing. "Rule 9(f) does not require the pleader to set out specific allegations of time and place; it merely states the significance of these allegations when they are actually interposed." *Abdulaziz v. City of Philadelphia*, No. Civ. A. 00–5672, 2001 WL 818476, at \*4 (E.D. Pa. June 26, 2001) (citing 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1309 (2d ed.1990)).

Wells Fargo advances two arguments in its brief supporting the Motion to Dismiss. The company contends that Virginia law bars the Lowes' conversion claim under the source of the duty rule. Even if the source of the duty rule does not apply, Wells Fargo argues that the Lowes do not properly plead conversion. Wells Fargo also requests that the Court strike the Lowes' claims for punitive damages.

Virginia's source of the duty rule bars tort claims that arise from a duty owed solely through contract. *See Richmond Metro. Auth. v. McDevitt St. Bovis, Inc.*, 507 S.E.2d 344, 347 (Va. 1998). "To determine whether a cause of action sounds in contract or tort, the source of the duty violated must be ascertained." *Id.* In *Oleyar v. Kerr, Trustee*, 225 S.E.2d 398, 399-400 (Va. 1976), the Supreme Court of Virginia distinguished between actions for tort and contract:

> If the cause of complaint be for an act of omission or non-feasance which, without proof of a contract to do what was left undone, would not give rise to any cause of action (because no duty apart from contract to do what is complained of exists) then the action is founded upon contract, and not upon tort. If, on the other hand, the relation of the plaintiff and the defendants be such that a duty arises from that relationship, irrespective of contract, to take due care, and the defendants are negligent, then the action is one of tort.

In certain circumstances, a tort action may be maintained despite any contractual relationship if the defendant breached an independent common law duty. *Richmond Metro. Auth.*, 507 S.E.2d at 347 (citing *Foreign Mission Bd. v. Wade*, 409 S.E.2d 144, 148 (Va. 1991).) Accordingly, a "plaintiff's claim for conversion may stand regardless of whether a contract exists because the common law duty not to convert the property of another for one's own purposes provides the basis for an independent tort action." *Jones v. Bank of Am. Corp.*, No. 4:09cv162, 2010 WL 6605789, at *4 (E.D. Va. Aug. 24, 2010) (quoting *Raleigh Radiology, Inc. v. Eggleston & Eggleston, P.C.*, No. 7:09cv334, 2009 WL 3764092, at *5 (W.D. Va. Nov. 10, 2009)); *see also Combined Ins. Co. of Am. v. Wiest*, 578 F. Supp. 2d 822, 832–33 (W.D. Va. 2008); *PGI, Inc. v.*

24

*Rathe Prods., Inc.*, 576 S.E.2d 438, 443 (Va. 2003) ("A cause of action for conversion lies independent of an action in contract and may provide a separate basis, distinct from the contract, upon which one partner may sue another.").

The source of duty rule does not bar the Lowes from bringing a conversion claim. Wells Fargo's alleged unauthorized movement of the Lowes' funds constitutes conversion, even in the absence of the contract, because Wells Fargo owes the Lowes a common law duty not to misappropriate funds. *See Jones*, 2010 WL 6605789, at *4. The Amended Complaint avers that Wells Fargo misappropriated funds by (1) assessing charges against the First Hadley Loan for force-placed insurance; and (2) converting $661.14 toward unpaid interest that was originally tendered for payment of the principal balance on the Second Hadley Loan. These conversion claims are based on the breach of a common law duty independent of the loan documents and so, the Virginia source of the duty rule does not bar the Lowes' claims under Count IV.

### a.    Charges on Second Hadley Loan for Pre-Filing Arrearages

Wells Fargo next argues that the Lowes fail to state a conversion claim for the pre-filing arrearages because the Amended Complaint fails to show that Wells Fargo wrongfully exerted dominion over any funds or deprive the Lowes of their possession in any funds.[8] Under Virginia common law, conversion is defined as "any wrongful exercise or assumption of authority . . . over another's goods, depriving him of their possession; [and any] act of dominion wrongfully

---

[8] Wells Fargo also argues that money cannot be the subject of a conversion claim unless it is part of a "segregated or identifiable fund." (Def. Mem. Supp. Mot. Dismiss at 23–25.) To the extent this is a recognized requirement, the funds at issue likely meet it. Virginia courts have held that money can be the object of conversion if it is part of a "segregated and identifiable fund." *Stallard v. Bank of Am., N.A.*, 137 F. Supp. 3d 867, 876 (E.D. Va. 2015) (holding that uncalculated interest charges were unidentified and not subject to conversion claim); *Jones*, 2010 WL 6605789, at *5 (finding that escrow funds for insurance and taxes constituted a segregated and identifiable fund). The $661.14 in contested interest payments likely meets this requirement. Unlike the uncalculated interest charges in *Stallard*, the contested funds here are clearly calculated and identified by the Account Statement as an Interest Arrearage. (Am. Compl. ¶ 67). Just as the mortgage payments in *Jones* were made for a specific purpose and misappropriated to a specific fund, the Lowes' $661.14 payment is similarly segregated and identifiable. *See Jones*, 2010 WL 6605789, at *5.

exerted over property in denial of the owner's right, or inconsistent with it." *PGI*, 576 S.E.2d at 443 (quoting *United Leasing Corp. v. Thrift Ins. Corp.*, 440 S.E.2d 902, 905 (Va. 1994)) (internal quotations omitted) (alterations in original).   The law of conversion in Virginia generally applies to tangible personal property, with limited exceptions. *See Jones*, 2010 WL 6605789, at *5.   However, money may be the subject of a conversion claim. *See Global Bankcard Services, Inc. v. Global Merchant Services, Inc.*, 2011 WL 2268057, at *5 (E.D. Va. June 7, 2011); *Fed. Ins. Co. v. Smith*, 144 F. Supp. 2d 507, 517–18 (E.D. Va. 2001) (finding fraudulently obtained funds subject to conversion), *aff'd*, 63 F. App'x 630, 635 (4th Cir. 2003); *Condo. Servs., Inc. v. First Owners' Ass'n of Forty Six Hundred Condo., Inc.*, 709 S.E.2d 163, 171 (Va. 2011); *PGI*, 576 S.E.2d at 443 (applying conversion claim to settlement funds).

The Amended Complaint plausibly pleads that the Lowes were entitled to the possession of the funds at issue.   However, Wells Fargo argues that its exercise of dominion over the funds cannot be wrongful because the Lowes submitted the funds voluntarily.   (Def.'s Mem. Supp. Mot. Dismiss at 25.)   The Lowes counter that Wells Fargo wrongfully appropriated the funds by agreeing to modify the loan and waive unpaid interest accrued on the loan as of October 28, 2013 and instead applied the funds to such pre-filing arrearages.

The Lowes sufficiently plead all elements of conversion for this claim. Wells Fargo's alleged dominion over the funds would be wrongful regardless of the voluntary nature of the Lowes' payment.   Similar to the partner who withheld settlement funds in *PGI*, the alleged charges for pre-filing arrearages would be wrongful because it is inconsistent with contractual promises Wells Fargo made to the Lowes. 576 S.E.2d at 444.   The Lowes aver that Wells Fargo agreed to waive accrued unpaid interest on the Second Hadley Loan.   Thus, the $661.14 allocated to pre-filing arrearages is properly plead as an exertion of wrongful dominion over the

Lowes' property. While Virginia law generally allows only tangible personal property to be the object of a conversion claim, money may also be converted. *See, e.g., Fed. Ins. Co.*, 144 F. Supp. 2d at 517–18; *PGI, Inc.*, 576 S.E.2d at 443; *Va. Podiatry Residency Found. v. Hurst*, 61 Va. Cir. 324, 326 (Va. Cir. Ct. 2003). In *Thrift Ins. Co.*, the court suggested that where money is a "clear, definite … and obvious property right," a conversion claim may go forward. 440 S.E.2d at 906; *see also Hurst*, 61 Va. Cir. at 326 (contrasting foundation's funds with forged stock certificate at issue in *Thrift Ins. Co.*). The Lowes clearly defined the pre-filing arrearage charges at issue, so the funds are subject to a conversion claim.

The Amended Complaint sufficiently pleads a conversion claim as to the pre-filing arrearages. As plead, Wells Fargo's alleged dominion over the $661.14 is inconsistent with the parties' purported prior agreement and would be wrongful. Lowes properly plead their entitlement to possession of the funds. Lastly, even though money is an intangible property right, it may be the subject of a conversion claim, especially where clearly identified, as it is here. Accordingly, the Court RECOMMENDS that Count IV of the Motion to Dismiss be DENIED as to the conversion claim on the $661.14 in unpaid interest charges on pre-bankruptcy filing arrearages.

### b.   Charges on First Hadley Loan for Force-Placed Insurance Premiums

As to the second conversion claim, for unlawful force-placed insurance charges on the First Hadley Loan, the Amended Complaint fails to state a claim upon which relief can be granted. The Lowes sufficiently plead the wrongfulness of Wells Fargo's control over the funds. Whether Wells Fargo's control was wrongfully exerted depends on the outcome of Count III, the alleged RESPA violation. Further, the Lowes aver entitlement to the possession of those funds. However, the Amended Complaint is not clear on what money was converted by the forced-

27

insurance charges because the Lowes fail to state a precise amount or the location of the converted funds. The Lowes may be able to amend their pleading to provide this additional detail. Accordingly, the Court RECOMMENDS that the conversion claim for the assessment of forced-insurance funds in Count IV of the Motion to Dismiss be DISMISSED WITHOUT PREJUDICE.

### c.    Punitive Damages

Wells Fargo also asks the Court to strike the Lowes' claim for punitive damages as insufficient under Rule 9(b). However, the Amended Complaint likely meets the Rule 9(b) pleading standard. In Virginia, punitive damages are recoverable when there is "misconduct or actual malice, or such recklessness or negligence as to evince a conscious disregard of the rights of another." *Simbeck, Inc. v. Dodd Sisk Whitlock Corp.*, 508 S.E.2d 601, 604 (Va. 1999). Rule 9(b) states that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Courts are hesitant to strike claims for punitive damages at the motion to dismiss stage because there are other procedural devices to limit unwarranted punitive damages claims, such as summary judgment and Rule 11 sanctions. *Tiller v. Hobart Corp.*, 58 F. Supp. 2d 688, 690-91 (W.D. Va. 1999). The Lowes assert generally that Fargo's actions were "intentional, deliberate, willful, reckless, and oppressive." (Am. Compl. ¶ 70.) This assertion is sufficient for Rule 9(b) purposes at the motion to dismiss stage and, thus, the Court RECOMMENDS that Wells Fargo's request to strike punitive damages in Count IV be DENIED.

### 4.    Count V: Fraudulent Filing of Information Return

Count V of the Amended Complaint avers that Wells Fargo filed a fraudulent information return when it reported the Lowes' account credit from the *Green* settlement as income on a

28

1099-MISC Form sent to the IRS on or around January 2017.  The Lowes contend that the account credit was a refund rather than miscellaneous income and that Wells Fargo fraudulently filed their 1099, along with thousands of other homeowners affected by the *Green* settlement, in an effort to reduce Wells Fargo's tax burden.

Wells Fargo first challenges that the Lowes have standing to bring Count V before the Court, arguing that the United States Bankruptcy Court for the District of Maryland, Greenbelt Division has "exclusive jurisdiction" over matters of construction, interpretation, modification, and enforcement of the *Green* settlement agreement.  (Def. Mem. Supp. Mot. Dismiss at 7.)  The Court disagrees.  Section 7434 of the Internal Revenue Code provides a private cause of action against "any person [who] willfully files a fraudulent information return with respect to payments purported to be made to any other person."  26 U.S.C. § 7434(a).  The 1099-MISC filed by Wells Fargo is an "information return" under the Code.  *See* 26 U.S.C. § 6724(d)(1)(A).  The Amended Complaint alleges that Wells Fargo filed a 1099-MISC with the IRS reporting the Lowes' account credit from the *Green* settlement as income.  Accordingly, the Lowes have standing to bring this claim under 26 U.S.C. §7434(a).

The *Green* Order Approving Settlement (the "*Green* Order") does not bear on the Lowes' standing to bring Count V of the Amended Complaint either.  The plain language of the *Green* Order provides guidance.  In Paragraph 54, the *Green* Order instructs that "[t]he [Maryland Bankruptcy Court] shall retain exclusive jurisdiction over all matters *subject to this Order*, including disputes arising under this Order, construction, interpretation, modification and enforcement of this Order, . . ."  (*Green* Order, art. 9, ¶ 54.)  However, the *Green* Order also states that "the scope of the matters being resolved via this Order is limited to the Covered Conduct. This Order does not settle, resolve, or prejudice any other rights or claims against

29

Wells Fargo, including claims arising under the National Mortgage Settlement pertaining to matters *other than Covered Conduct*." (*Id.* art. 8, ¶ 53(e).) Covered Conduct is defined as:

1. The timeliness of PCNs filed during the Relevant Period;
2. The lack of filing of required PCNs during the Relevant Period;
3. The adequacy of Wells Fargo's policies and procedures concerning the necessity of filing and the timeliness of filing PCNs during the Relevant Period; and
4. The timeliness of preparing and communicating Escrow Analyses to borrowers in Bankruptcy Cases during the Relevant Period.

(*Id.* art. 2.)

The filing of a fraudulent return from an account credit arising out of the *Green* settlement is not within the Covered Conduct definition and, thus, is outside the scope of the Order. Further, the Lowes are not "subject to the Order." The Order explicitly states that it "will not bind or prejudice the rights and claims of non-Parties." (*Id.* art. 9, ¶ 56.) The only parties to the Order are Wells Fargo and the United States Trustee Program, not affected homeowners like the Lowes. (*Id.*, Recitals, at 2.) For these reasons, the Lowes have standing to bring Count V before this Court.

Wells Fargo next argues that the term "income" is broadly defined by the Internal Revenue Code and the account credit is a penalty rather than income. (Def.'s Mem. Sup. Mot. Dismiss at 28–29.) Wells Fargo's argument calls for the Court to rule, as a matter of law, on proper legal characterization of the *Green* credit as construed by the Internal Revenue Code. Such argument is properly raised in a motion for summary judgment, not in a motion to dismiss.

Finally, Wells Fargo contends that the Lowes failed to plead fraud with the particularity required under Federal Rule of Civil Procedure 9(b). (*Id.*) Under Rule 9(b) a "plaintiff must, at a minimum, describe the time, place, and contents of the false representation, as well as the identity of the person making the misrepresentation and what he obtained thereby." *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008). In other

words, a plaintiff must set forth "the who, what, when, where, and how of the alleged fraud" before access to the discovery process should be granted. *Id.* "The second sentence of Rule 9(b) allows conclusory allegations of defendant's knowledge as to the true facts and of defendant's intent to deceive." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999). The Lowes set forth the time, place, and contents of the false representation in the Amended Complaint by alleging that Wells Fargo filed a fraudulent information return – the 1099-MISC – with the IRS in January 2017 that improperly characterized the *Green* credit the Lowes received as income. Wells Fargo is "aware of the particular circumstances for which [it] will have to prepare a defense for trial" and based on the thoroughness of the factual allegations in Count V, the Lowes have "substantial prediscovery evidence of those facts." *Id.* (finding that a court should hesitate to dismiss a complaint under the Rule 9(b) heightened pleading standard where the above conditions are met).

Accordingly, the Court RECOMMENDS that the Motion to Dismiss be DENIED as to Count V.

## IV.   CONCLUSION

Having considered the Amended Complaint and the parties' briefs, and for the reasons discussed herein, the Court RECOMMENDS that Defendant's Motion to Dismiss Plaintiffs' Amended Complaint be GRANTED in part and DENIED in part. Specifically, the Court RECOMMENDS that:

- Count I and Count II of the Amended Complaint be DISMISSED WITH PREJUDICE;
- Count IV pertaining to the conversion claim for force-placed insurance premiums on the First Hadley Loan be DISMISSED WITHOUT PREJUDICE;
- Wells Fargo's request to strike punitive damages in Count IV be DENIED; and

31

- Defendant's Motion to Dismiss Plaintiff's Amended Complaint be DENIED as to Count III, the conversion claim for charges of waived unpaid interest on the Second Hadley Loan in Count IV, and Count V.

The Clerk is DIRECTED to file this Report and Recommendation electronically and send a copy to all counsel of record and to the Honorable Robert E. Payne, Senior United States District Judge.

## V.    NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions, and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a *de novo* review of the determinations contained in the report and such failure shall bar you from attacking on appeal those findings and conclusions accepted and adopted by the District Judge except upon the grounds of plain error.**

_____ /s/
Roderick C. Young
United States Magistrate Judge

Richmond, Virginia
Date: July 9, 2018